give it life rather than one which will cause its provisions to be meaningless. When the statute uses the word "retaken" to indicate that the vendor has required possession of the chattels sold, there is no reason why such word should have one meaning if the chattels are seized by virtue of legal process, and another if taken without the aid of the courts. The protection of the statute is based upon the "retaking," not upon the method employed to obtain possession.

The defendants' claim that the plaintiff should have appeared in the replevin action and asserted her rights, apart from the question of power, the right of the defendant to plead and prove a counterclaim in an action to recover a chattel is extremely doubtful. Replevin is a possessory action only, and in the nature of things a claim for money or for other chattels cannot be counter to the plaintiff's claim, and a court of equity will very rarely interfere in an action concerning the right to possession of chattels. Pomeroy's Rights and Remedies, § 767. And, even in the rare cases in which an equitable defense is allowed, it must go to the question of possession. Those cases in which a judgment in favor of a plaintiff having a lien is limited to the amount of such lien do not present a counterclaim.

Judgment affirmed, with costs.

---

(51 Misc. Rep. 158.)

## In re HIGGINBOTHAM.

(Surrogate's Court, Kings County. June 25, 1906.)

EXECUTORS AND ADMINISTRATORS—PAYMENTS TO MAINTAIN REAL ESTATE.

Where the persons who are next of kin to intestate are also her heirs at law, and it is manifestly advantageous that property descending to them as heirs should be maintained, and it can only be so maintained and preserved intact by paying therefor from the funds to which they are entitled as next of kin, payments so made by the administrator will be approved, and he will not be charged therewith on his accounting, and compelled to resort to an action at law against the heirs at law.

[Ed. Note.—For cases in point, see vol. 22, Cent. Dig. Executors and Administrators, §§ 437, 545.]

In the matter of the accounting of E. Gaston Higginbotham, administrator of Mary V. A. Higginbotham, deceased. Decree directed.

Francis B. Mullin, for administrator.
Wilson & Wallis, for objector Halligan.
Darwin J. Meserole, for objector Hardie.
Leonidas Dennis, for the Lawyers' Surety Company of New York.

CHURCH, S. Several objections were made to the account herein by each of the next of kin. Subsequent to the hearing herein, however, one of such next of kin, Mrs. Carlotta Hardie, withdrew her objections to the account. The principal objections of the remaining next of kin, Mrs. Rita S. Halligan, do not question the propriety and amount of the expenditures for which the administrator seeks credit. but rely upon the proposition of law that they were not such expenditures as come within the scope of an administrator's dealings with the estate. Such other objections as are filed by Mrs. Halligan are in-

sufficient in my judgment; so that the sole question to be determined is whether these disputed expenditures are such as the administrator can be properly credited with. For the purpose of thoroughly ascertaining the conditions surrounding this estate, it is essential that a complete statement of the facts should be spread upon the record, so that the court may fully appreciate the circumstances under which the administrator took charge of his trust, as well as the later developments.

The deceased, Mary V. A. Higginbotham, was the mother of the administrator herein and of the two contestants, Mrs. Halligan and Mrs. Hardie; they being her only next of kin and heirs at law. At the time of the death of the deceased Mrs. Hardie was not married, and for several years had been residing with her mother in the latter's home, 425 Halsey street, Brooklyn. With the exception of furniture in such house and the wearing apparel and jewelry of the deceased, and with, of course, the exception of the house itself, she left no property except an interest in an estate which has been for the convenience of parties referred to as the "Powers estate." As Mrs. Halligan had an establishment of her own, maintained by her husband, and as the administrator also had a home, where he resided with his wife and children, the problem that confronted them as next of kin and heirs at law of the deceased was as to the making of arrangements for the proper support and maintenance of their sister, Carlotta Higginbotham. This matter was, therefore, the subject of conversations and agreement between these children of the deceased; and Judge Higginbotham suggested that the sister, Carlotta Higginbotham, should be permitted to reside at 425 Halsey street, and also to take the furniture and other personal effects of such house for her own use, and that he and his sister, Mrs. Halligan, should from time to time make such expenditures as became necessary to maintain such establishment. In fact, he went further than merely suggesting that his sister should have permission to keep the house, and was desirous of having Mrs. Halligan unite with him in a deed to his unmarried sister conveying to her the entire ownership of such property. Mrs. Halligan did not approve of this course, but, notwithstanding her refusal, the administrator made and executed to his said sister Carlotta a deed of all of his interest in the property left by his mother.

Mrs. Halligan attempts to deny this proposition, but it is perfectly apparent that she was fully aware of the fact that her mother died leaving no personal estate, other than the claim to an interest in the Powers estate, and that if her sister Carlotta was to continue to reside at the Halsey street house some provision would have to be made to enable her to meet the expenses incident thereto. In pursuance of such understanding, therefore, the administrator herein from time to time gave to his sister Carlotta such sums of money in cash as she desired for her personal or household expenses, and in addition paid interest, taxes, and insurance on the Halsey street property. These expenditures were all advanced for the benefit of the parties interested out of his personal funds; and when he subsequently received the share of his mother from the Powers estate he presents his

accounts, asking that he be given credit for the expenditures thus made and that they be treated as personal advances on the distributive shares of the parties hereto. Mrs. Halligan objects to the various items in Schedule D of the account, which were made in maintaining such real estate, on the ground that an administrator has no right or is under no obligation to expend any money on behalf of any realty belonging to the estate, and therefore, is not entitled to any credit for sums so expended.

Viewed abstractly, the correctness of the foregoing contention as a matter of law stands conceded. But there are exceptions to this rule; and where the persons who are next of kin are also the heirs at law, and where it is manifestly advantageous that property descending to them as heirs at law should be maintained, and it can only be so maintained and preserved intact by paying therefor from the funds to which they are entitled as next of kin, then such payments will be approved, and the administrator will not be charged in his decree with the amount thereof, and remitted to his rights in a court of law to recover such funds by an action against the heirs at law. In this case it is perfectly apparent that Mrs. Halligan knew that this house had to be maintained, and the taxes, interest, insurance, and other items in connection therewith had to be promptly paid. Her evidence upon this point is evasive and unsatisfactory, and her long period of silence and inaction in relation to this property can only be explained upon the hypothesis that the testimony of the administrator as to the agreement between him and his sisters was the correct understanding of the transaction. The administrator herein is a lawyer of standing and repute in the community. He knew perfectly well, therefore, that unless it was agreeable to the parties that this house should be so maintained, he would not be justified in expending a dollar of the personal property thereon, and, if Mrs. Halligan had intimated she would take the position in relation thereto which she has taken on this accounting, there is no doubt that this administrator would promptly have instituted partition proceedings to have such house disposed of.

Under these circumstances, therefore, the arrangement between the parties was practically a direction by the sisters to the administrator to maintain such house, and that the moneys paid in so doing should be regarded as a payment from the distributive shares in the estate of the deceased. It follows as a consequence that, while some of these items are not placed in the proper schedule, the administrator is entitled, notwithstanding, to proper credit therefor, and that the net balance remaining in his hands for distribution is correct.

Let findings and decree settling his accounts in accordance with this opinion be presented.